## Slayden et al. v. Johnson et al.

Feb. 11, 1944.

Charles Ferguson for appellants.

C. H. Wilson and C. C. Grassham for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—.
Affirming.

We have an unusual question of delivery of a deed.

T. N. Johnson purchased a lot in Salem from C. C. Grassham for $600 on May 14, 1937. At his request Johnson's four children, all adults, were named grantees in the deed, with the understanding between him and Judge Grassham that Johnson might decide not to deliver the deed to his children or put it to record, in which event the grantor would execute another deed to Johnson as grantee. He built a storehouse upon the lot and he and his son Rubel ran a store in it as partners until early in 1941 when the father sold his interest to his son and also the real estate. When Judge Grassham was asked to execute another deed conveying the property to Johnson, he advised that a quitclaim deed should be obtained from the four children and required a written statement from Johnson that the original deed had never been delivered or recorded. Three of the children signed the quitclaim deed to Rubel, but a daughter, Mrs. Mabel Slayden, refused because she wanted her father to keep the property "for a living;" she did not want him to sell it but desired nothing out of the property while he lived, nor want Rubel to get all he had when he died. The father substantially admits these were the reasons she declined. Nevertheless, Judge Grassham executed a deed on January 20, 1941, naming T. N. Johnson as grantee. It was dated back to May 14, 1937, the grantor being unwilling to make it as of the correct date, since it would carry a warranty of title to the property after the building had been erected. Johnson conveyed it to his son Rubel. Mrs. Slayden brought this suit to quiet her title to a one-fourth undivided interest in the property and to have the subsequent deeds cancelled. The chancellor held there had been no legal delivery of the first deed; hence, that the plaintiff had acquired no interest in the property. She appeals.

T. N. Johnson and his son both testified that the former had held the deed in his possession at all times, except on one occasion he left it with his other papers with Rubel for safekeeping while he was on a trip to Florida. No one claims that such temporary custody constituted a delivery. It is not disputed that the other children, three daughters, were told by the father and brother that the title to the lot was in the children and

that the father wanted that fact kept secret from his wife, their stepmother, with whom he was having domestic trouble when he bought the lot and from whom he was later divorced. Mrs. Slayden, her husband and daughter testified that Rubel told her that he had the deed at his house and she could see it whenever she wanted to. It is significant that in July, 1937, a half interest in a brick wall adjoining the lot was conveyed by the owner to Rubel. As we understand, this became one of the walls of the new storehouse. The fire insurance on the property was carried in the name of the four children as owners. The demand for a quitclaim deed is further recognition. That the parties acted as if title had passed to them as grantees may well be regarded as showing or tending to show delivery. Bunnell v. Bunnell, 111 Ky. 566, 64 S. W. 420, 65 S. W. 607. On the other hand the father expended a considerable sum in erecting the building, paid the taxes and in all other respects treated the property as his own, which action constitutes a negative intention. Tiffany, Real Property, Sec. 1045. But Rubel's statements in regard to having the deed are not incompatible with the claim that there was never any legal delivery, for it may have been during the time he had custody of his father's papers during his absence. At any rate, the evidence is not so forceful as to lead us to reach a decision different from what the chancellor decided, namely, that T. N. Johnson never delivered the deed.

It is elementary that a deed to land becomes operative by the mutual intention and action of the parties, grantor and grantee, in delivering and accepting it, for delivery of an instrument is a part of the execution thereof. Sullivan v. Bland, 215 Ky. 57, 284 S. W. 410; Christopher's Adm'r v. Miniard, 267 Ky. 484, 102 S. W. (2d) 978. The simple proposition, however, may be very complex by reason of the particular states of fact. Delivery involves the essential elements of a meeting of the minds to consummate and give effect to the transaction, and, generally, of the manual transfer or other overt action of both parties, although they may be only symbolic. Of the two elements that of intention that the instrument shall take effect is more important, for it is that which controls. Bunnell v. Bunnell, 111 Ky. 566, 64 S. W. 420, 65 S. W. 607; Ratcliff's Guardian v. Ratcliff, 242 Ky. 419, 46 S. W. (2d) 504. It is as much a question of fact as is the physical transfer of the in-

strument. Kirby v. Hulette, 174 Ky. 257, 192 S. W. 63; Ball v. Sandlin, 176 Ky. 537, 195 S. W. 1089. It is also quite elementary that delivery may be made through an agent of the grantor or to a third person for the benefit of the grantee provided that was the intention of the grantor and the stranger is actually or constructively the agent of the grantee. Beatty v. Beatty, 151 Ky. 547, 152 S. W. 540; Fitzpatrick v. Layne, 291 Ky. 523, 165 S. W. (2d) 13. Or it may be made to one of several grantees for the benefit of all. Salyers v. Salyers, 272 Ky. 702, 114 S. W. (2d) 1130.

Looking at the transaction from the other side, there must be the intention to accept the conveyance on the part of the grantee, for title to property cannot be thrust upon one. Sullivan v. Sullivan, 179 Ky. 686, 201 S. W. 24; Sullivan v. Bland, supra; Salyers v. Salyers, supra. The acceptance may be constructive or it may be ratified, and in the case of infants or mental incompetents it is presumed if to their advantage. Ward v. Rittenhouse Coal Company, 152 Ky. 228, 153 S. W. 217; Combs v. Ison, 168 Ky. 728, 182 S. W. 953; Sullivan v. Sullivan, supra.

The facts in the instant case do not bring it exactly within any of the foregoing rules, and yet they must be considered as establishing a comprehensive delineation of a legal delivery of a deed. The delivery of the deed and its acceptance by the father, it seems to us, was in the nature of an escrow but not a true one, for there was no condition to be satisfied or qualification attached to the authority of the father to deliver the deed to the children. Huff v. Begley, 233 Ky. 181, 25 S. W. (2d) 75. Nor was it placed in the hands of the father to be delivered when any event should occur, which would have divested title from the grantor. Hounshell v. Hounshell, 232 Ky. 532, 23 S. W. (2d) 959. Under the conclusion of facts stated, the grantor parted with dominion and control of the instrument both as a matter of intention and of action. It is quite certain that the legal title did not vest in the father for he was not named a grantee, although perhaps he acquired the equitable title. We think it must be regarded that at the purchaser's request Judge Grassham, in effect, granted him a power or authority to complete the transaction by delivering the deed to the named grantees at his own will. Since he never executed the power or exercised the discretionary authority by delivering the

deed to the grantees or anyone of them, it must follow that the title never left the seller, Grassham. Therefore, it was proper and legal for him to execute the later deed to the father, as the court adjudged.

We have not overlooked appellants' argument that McHargue v. McHargue, 269 Ky. 355, 107 S. W. (2d) 278, supports their contentions. In a large measure, the facts are like those presented in this case, but there is a controlling exception. In that case the evidence established an actual delivery of the first deed to the wife. In Beatty v. Beatty, supra, a father paid for the land, had his children named as grantees, kept the deed and never delivered it to them. However, they took possession and occupied the land as their own. Under those circumstances, we held the father had received the deed as agent or trustee for his children in whom the title vested. It is the absence of possession or occupancy in the present case that distinguishes it.

The judgment is affirmed.